

**IT IS ORDERED as set forth below:**

**Date: January 29, 2018**

_____

**C. Ray Mullins**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 05-96359-CRM |
| LINDSEY JONES, | CHAPTER 13 |
| Debtor. | |
| LINDSEY JONES, | ADVERSARY PROCEEDING NO. 17-5231-CRM |
| Plaintiff, | |
| v. | |
| CITIMORTGAGE, INC. et al., | |
| Defendants. | |

## ORDER

**THIS MATTER** is before the Court on Defendants' Motions for Summary Judgment. Plaintiff filed a complaint alleging that Defendants violated the discharge injunction of section 524 of the Bankruptcy Code when they sent him correspondence after he received a chapter 7 discharge. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and within this Court's subject matter jurisdiction.

### I.      Undisputed Facts

The facts in this case are largely undisputed. The parties have been involved in litigation for several years, and the Eleventh Circuit Court of Appeals has issued an order establishing certain facts relating to the Defendants and the allegations in the complaint. *See Jones v. CitiMortgage, Inc.*, Case No. 15-14853 (11th Cir. Nov. 9, 2016) (the "11th Circuit Order"). The Court relies on the undisputed facts set out in the 11th Circuit Order and the submissions in connection with this Motion.

#### a.   The Loan

On June 19, 2002, Plaintiff obtained a loan from FirstCity Mortgage, Inc., d/b/a Eagle Mortgage Services, for $127,893 to purchase property at 1701 Charmeth Road, Lithonia, Georgia (the "Property"). That same day, the note was signed over to CitiMortgage, Inc. ("Citi"). Plaintiff executed a security deed in favor of Mortgage Electronic Systems, Inc. (MERS) as nominee for FirstCity Mortgage. The security deed was subsequently assigned to Citi on April 26, 2010.

#### b.   Bankruptcy

Plaintiff filed chapter 7 bankruptcy on September 26, 2005. Plaintiff did not reaffirm the note and deed. The chapter 7 trustee entered a report of no distribution. Plaintiff's case was discharged on January 18, 2006, and the case was closed on January 27, 2006.

2

The discharge order provides:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged.  For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. . . . A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

> However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.  Also, a debtor may voluntarily pay any debt that has been discharged.

Bankr. Doc. No. 5.

### c. Post-Bankruptcy

It appears that, after his discharge, Plaintiff continued to make mortgage payments until some point in 2010.  Thereafter, Citi retained the law firm of McCurdy & Candler, LLC, to initiate a non-judicial foreclosure action.  McCurdy & Candler sent Plaintiff letters in June 2010 indicating that the loan was in default, that a foreclosure sale would occur on August 3, 2010, and that title to the Property would likely be transferred to the Secretary of Housing and Urban Development ("HUD") after foreclosure.  One letter claimed that Plaintiff owed around $130,000.00, but it also noted that he was not personally liable if he had received a bankruptcy discharge.

On August 3, 2010, Citi foreclosed the mortgage on the Property.[1]  "It is undisputed that the discharge did not affect Citi's rights to exercise the power of sale in the security deed."  11th Circuit Order at *5 n.3 (citing *Bank of Am. v. Cuneo,* 770 S.E.2d 48, 53 (Ga. App. 2015) ("Although [the debtor] may have been discharged from any in personam liability with respect to the judgment of indebtedness, such discharge did not cancel the title to the real estate held by [the

---

[1] It appears that the Property was sold at the foreclosure sale on August 3, 2010.  However, the foreclosure sale was later rescinded on October 28, 2014.

3

bank] under its deed to secure debt, nor did such bankruptcy affect its power of sale contained therein.")).

After the foreclosure, Plaintiff moved most of his belongings to a warehouse and waited for a demand of the Property, but it never came. Instead, in December 2010, he received another notice from McCurdy & Candler stating that the mortgage for the Property was about to be foreclosed. Plaintiff challenged the August 2010 foreclosure in the Superior Court of Fulton County. The Defendants removed the complaint to federal district court, which dismissed with prejudice the federal claims and remanded the remainder of the lawsuit to the Superior Court of Fulton County.

In June 2012, Judge Markle granted summary judgment to the Defendants on all claims raised in the Fulton County state-court lawsuit. Judge Markle concluded that it was "clear that Defendants had the ability to foreclose," because Citi had obtained the note in June 2002 and the security deed in April 2010. Plaintiff unsuccessfully appealed the decision to the Georgia Court of Appeals and the Supreme Court of Georgia.

In August 2014, nearly four years after the first foreclosure, Plaintiff received a notice-of-foreclosure letter from the Phelan firm on behalf of Citi. The letter indicated that the mortgage for the Property was about to be foreclosed, that title to the Property would be transferred to the mortgage lender within 60 to 90 days, and that, shortly thereafter, title would likely be transferred to HUD. Additional letters from the Phelan firm stated that the debt on the loan connected with the Property was around $175,000.00 and that a foreclosure sale was scheduled for April 7, 2015.

### d. District Court Action

Plaintiff filed a complaint in federal district court on April 6, 2015 in which he sought to prevent the second foreclosure, *Jones v. CitiMortgage, Inc.*, civil action number 1:15-CV-1002-

WBH (N.D. Ga.).   The complaint included various allegations that Plaintiff's statutory and constitutional rights were violated.   Count Five alleged that Citi and the Phelan firm violated the discharge injunction of 11 U.S.C. § 542(a)(2).   More specifically, Plaintiff alleged that Citi and the Phelan firm violated the discharge injunction by attempting to hold him personally liable for the mortgage debt.   According to Plaintiff, the Defendants communicated to both him and others, including credit-reporting agencies and the Internal Revenue Service, that he was personally liable for the mortgage debt despite his bankruptcy discharge in 2006.

The Defendants moved to dismiss the complaint, and the district court dismissed the complaint on September 24, 2015.   The court found that Citi and the Phelan firm did not violate the discharge injunction because the letters sent to Plaintiff disclaimed that he was personally liable if he had received a bankruptcy discharge.   The district court also declined to enjoin the second foreclosure.   Plaintiff appealed.

### e.   11th Circuit Order

The Eleventh Circuit upheld the dismissal of all of Plaintiff's claims except for the claim that Citi and the Phelan firm violated the discharge injunction.   The Eleventh Circuit Court of Appeals noted that the "letters arguably could be read to assert Plaintiff was personally liable for the debt, but they also noted he was not personally liable if the debt had been discharged in bankruptcy."   11th Circuit Order at *7-8.   Nevertheless, the Eleventh Circuit panel found that the district court should not have reached the merits of Plaintiff's discharge injunction claim and that the issue was one for the Bankruptcy Court.

The court explained, "A debtor who believes that the discharge injunction has been violated may file a contempt action with the bankruptcy court that issued the discharge injunction, not with another court."   *Id.* at *15-16 (citing *Alderwoods Grp., Inc. v. Garcia,* 682 F.3d 958, 970-71 (11th

Cir. 2012)).  The court that issued the discharge injunction is "the court that 'alone possesse[s] the power to enforce compliance with' the discharge injunction," and other courts lack jurisdiction to do so.  *Id.* at *16 (citing *Green Point Credit, LLC v. McLean (In re McLean),* 794 F.3d 1313, 1319 (11th Cir. 2015); *Alderwoods Grp., Inc.,* 682 F.3d at 971).  The Eleventh Circuit explained that because this Court issued Plaintiff's discharge, this Court alone possesses the power to enforce compliance with the discharge injunction and "punish contempt of that order."  *Id.*  Therefore, if Citi or the Phelan firm violated the discharge injunction, it is this Court – not the district court – that has the power to sanction them for attempting to pressure Plaintiff to pay the discharged debt personally.  *See In re McLean,* 794 F.3d at 1320, 1323-24 (discussing sanctions).  The court determined that the district court should not have reached the merits of Count Five.

The Eleventh Circuit vacated the dismissal of Count Five and remanded the case to the district court with instructions to refer the matter to this Court.  The Eleventh Circuit remanded the case to the district court to refer to this Court the issue of whether defendants violated the discharge injunction.  The district court entered an order referring the matter to this Court, but the Court has no record of receiving the referral.

### f.  Adversary Proceeding

Undoubtedly frustrated, Plaintiff filed a complaint initiating this adversary proceeding on August 30, 2017.  He filed an amended complaint on September 7, 2017.  He alleged that he was continually contacted by Citi and the Phelan firm with statements, payoff requests, notifications, 1099s, corrected 1099s, billings, escrow statements, numerous foreclosure notice letters, and other documents, and that these communications violate the discharge injunction.  He sought damages and punitive damages for violations of the discharge injunction, as well as injunctive relief.

Plaintiff filed a motion for a temporary restraining order and injunction on September 5, 2017, asking the Court to enjoin a foreclosure sale scheduled the same day.  The Court found that Plaintiff failed to clearly establish that a temporary restraining order and injunction are warranted and denied the motion.  The Court noted that a chapter 7 discharge relieves a debtor of personal liability on most debts, but it does *not* affect a secured creditor's security interest in real property; accordingly, a secured creditor may still foreclose after the debtor receives a chapter 7 discharge.

Defendant Citi filed a motion to dismiss on September 28, 2017.  Plaintiff filed an untimely response on October 17, 2017.  The Phelan firm answered the complaint on October 10, 2017 and moved to dismiss the complaint.  The Court held a status hearing on October 24, 2017.  Plaintiff, counsel for Citi, and counsel for the Phelan firm were present.  The Court noted that the only issue properly before it was the issue that the Eleventh Circuit had directed the Court to consider: whether Defendants violated the discharge injunction.  The Court stated that it was inclined to treat the motions to dismiss as motions for summary judgment under Federal Rule of Civil Procedure 56(a).[2]  The Court noted that it would give the parties a reasonable opportunity to present all material pertinent to the motions.

Defendant the Phelan firm filed a motion for summary judgment on November 14, 2017.  Plaintiff had until December 5, 2017 to respond.  He failed to file a response; consequently, the Motion is deemed unopposed pursuant to Local Rule 7007-1(c).  Defendant Citi filed a motion for summary judgment on November 21, 2017.  Plaintiff responded on December 12, 2017.  Citi replied.  The Court now must consider whether summary judgment is appropriate.

---

[2] Per Rule 12(d), when a party moving under Rule 12(b)(6) presents matters outside the pleadings and the court does not exclude the materials, the court must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56.

## II.     Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c).  "The substantive law [applicable to the case] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden of proving there are no disputes as to any material facts.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings.  Fed. R. Civ. P. 56(e).  Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts.  *Hairston*, 9 F.3d at 918.  When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the non-moving party and all reasonable doubts and inferences should be resolved in favor of the non-moving party.  *Id.*

"We liberally construe the filings of *pro se* litigants. *Campbell v. Air Jamaica Ltd.,* 760 F.3d 1165, 1168 (11th Cir. 2014).  Despite this leniency, courts may not serve as *de facto* counsel or rewrite deficient pleadings in order to sustain an action.  *Id.* at 1168-69." Id. at *10.

### III.    Analysis

#### a.    Chapter 7 Discharge and the Discharge Injunction

In a chapter 7 case, unless a party in interest timely objects, "the court shall grant the debtor a discharge."  11 U.S.C. § 727(a).  Generally speaking, "a discharge under [§ 727(a)] discharges the debtor from all debts that arose before the date of the order for relief under [chapter 7]."  11 U.S.C. § 727(b).  The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset [a discharged debt] as a personal liability of the debtor . . ."  11 U.S.C. § 524(a)(2).  The purpose of the discharge injunction is to afford "honest but unfortunate debtors with a 'fresh start' from the burdens of personal liability for unsecured prepetition debts and thus advances the overarching purpose of the Bankruptcy Code."  *Canning v. Beneficial of Maine, Inc. (In re Canning)*, 706 F.3d 64, 69 (1st Cir. 2013).

However, a chapter 7 "discharge extinguishes *only* 'the personal liability of the debtor' . . . . [and] the Code provides that a creditor's right to foreclose on a mortgage survives or passes through the bankruptcy."  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (emphasis in original); *see also Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991) ("[o]rdinarily, liens and other secured interests survive bankruptcy").  While the discharge provides the release of debtors from certain obligations to creditors, it does not affect a secured creditor's interest in real property.  *See In re Rivera*, 256 B.R. 828, 832 (Bankr. M.D. Fla. 2000).  "Thus, from a legal standpoint, the debt remains technically in existence, and may be enforced against the collateral by those creditors with security interests unaffected by bankruptcy."  *In re Zine*, 521 B.R. 31, 39 (Bankr. D. Mass. 2014).

When a debtor receives a discharge in bankruptcy, the discharge operates as an injunction against the commencement or continuation of any act to collect, recover, or offset any such debt

*as a personal liability of the debtor*.  11 U.S.C. § 524(a)(2) (emphasis added).  Section 524(a)(2) has been interpreted expansively, and the Eleventh Circuit has held that it prohibits any action that has the effect of pressuring a debtor to repay a discharged debt, even if the means are indirect. *Green Point Credit, LLC v. McLean (In re McLean),* 794 F.3d 1313, 1320 (11th Cir. 2015).

### b. Bankruptcy Courts May Exercise Their Contempt Powers Under Section 105 to Enforce the Provisions of the Discharge Injunction

Section 524 provides a broad injunctive power that effectively bars creditors from collecting debts as personal liabilities from debtors who have received a bankruptcy discharge. The section does not include an explicit enforcement mechanism; the section is silent with respect to a private right of action for debtors injured by a creditor's violation of the discharge injunction. *See In re Meyers*, 344 B.R. 61, 64 (Bankr. E.D. Pa. 2006).   Nevertheless, it is widely accepted that bankruptcy courts may use their statutory contempt power under section 105 to provide a remedy for willful violations of the discharge injunction.   *In re Wallace*, No. 09-bk-594-PMG, 2011 Bankr. LEXIS 1168, at *11 (Bankr. M.D. Fla. Apr. 5, 2011) (citing *In re Wynne*, 422 B.R. 763, 768 (Bankr. M.D. Fla. 2010)).  "In other words, even though § 524 does not expressly authorize a 'private right of action' for violations of the discharge injunction, courts may exercise their contempt power under § 105 to enforce the provisions of § 524." *Id.* (citing *In re Wynne*, 422 B.R. at 768; *see also In re Singleton*, 269 B.R. 270, 275 (Bankr. D.R.I. 2001) ("it is now clear that 11 U.S.C. § 105(a) authorizes the Bankruptcy Court to utilize its equitable powers to enforce the § 524(a) discharge injunction.")).

The Eleventh Circuit has held that "the test for whether a creditor violates the discharge injunction is whether the objective effect of the creditor's action is to pressure a debtor to pay a discharged debt . . . ." *Roth v. Nationstar Mortg. LLC (In re Roth)*, 568 B.R. 139, 145 (M.D. Fla. 2017) (citing *In re McLean*, 794 F.3d at 1322)).  To establish a violation of § 524, a debtor must

prove that the plaintiff willfully violated the discharge injunction.  The Eleventh Circuit has held that a creditor willfully violates the discharge injunction if: (1) the creditor knew that the discharge injunction was invoked; and (2) the creditor intended the actions which violated the injunction. *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)).  The Eleventh Circuit has also determined that "[a] finding of civil contempt must be based on 'clear and convincing evidence' that a court order was violated."  *Jove*, 92 F.3d at 1545.

A bankruptcy court exercises considerable control and broad equitable powers to enforce discharge injunctions and determine whether sanctions are appropriate.  *Roth*, 568 B.R. at 145 (citing *In re Hardy*, 97 F.3d at 1389).  If there are no disputed factual matters in the record, no hearing is required.  *Roth*, 568 B.R. at 145 (citing *In re McLean*, 794 F.3d at 1324, n.4; *Mercer v. Mitchell*, 908 F.2d 763, 769 n.11 (11th Cir. 1990)).

### c.  Section 524 Prohibits Certain Behaviors Tantamount to Debt Collection Practices, But It Does Not Bar a Creditor From Contacting a Debtor

Section 524 prohibits behaviors such as calling and sending letters to a debtor that are tantamount to debt collection practices.  But, section 524 does *not* bar a creditor from contacting a debtor who received a discharge in bankruptcy.  In some circumstances, communication between a creditor and a debtor may be appropriate regarding a discharged loan.  For example, a debtor discharged from a loan obligation may need to know the amount due, and communication might be appropriate to "facilitate the making of monthly post petition payments by the debtor."  *Mele v. Bank of Am. Home Loans (In re Mele)*, 486 B.R. 546, 556 (Bankr. N.D. Ga. 2013) (citing *In re Henry*, 266 B.R. 457, 473 (Bankr. C.D. Cal. 2001)); *see also Wallace*, 2011 Bankr. LEXIS 1168, at *15-16 (explaining that there may be circumstances where a debtor who has been discharged from a loan obligation needs to know the amounts due).

11

Whether a communication violates the discharge injunction is a fact-intensive inquiry because not every communication from a creditor following the conclusion of a chapter 7 case violates the discharge injunction. *Roth*, 2016 Bankr. LEXIS 3381, at *10-11. Communication of information regarding a residential mortgage debt is not an "act to collect" a debt if there is a valid purpose in communicating the information and if the communication itself is informational only. *See Thomas v. Seterus Inc. (In re Thomas)*, 554 B.R. 512, 520 (Bankr. M.D. Ala. 2016) (citing *Connor v. Countrywide Bank, N.A. (In re Connor)*, 366 B.R. 133, 137-38 (Bankr. D. Haw. 2007)). A debtor's mere indication of his or her intent to surrender the property, without more, does not invalidate a mortgagee's purpose in providing information. Some post discharge communication is necessary and should be encouraged, especially in a case in which a debtor has indicated she intends to keep her home. *Mele*, 486 B.R. at 556; *see also In re Schatz*, 452 B.R. 544, 549-50 (Bankr. M.D. Pa 2011) (explaining that secured creditors should be encouraged to send informational statements to a discharged debtor who intends to keep the secured property).

Even if a communication has a valid informational purpose, it must be limited to that purpose to avoid violating discharge injunction. *See Thomas*, 554 B.R. at 520 (explaining that communications must be limited so as not to violate the automatic stay). This generally requires that the communication have at least one prominent and unambiguous disclaimer to that effect, and a lengthy communication should have multiple disclaimers. Moreover, the body of the communication should be limited to providing information; it should not overtly demand payment, and it should not have the overall effect of inviting or coercing payment. *Id*.

Statements that include prominent disclaimers are often found to be informational. For example, in *Roth*, 2016 Bankr. LEXIS 3381, at *10-11, the creditor sent the debtor informational statements that included extensive disclaimer language. The disclaimer was not buried in

12

boilerplate language; rather, the disclaimer was prominently displayed in bold on the first page

and extensively described the purpose for the communication.  The statement provided:

> This statement is sent for informational purposes only and is not intended as an
> attempt to collect, assess, or recover a discharged debt from you. . . . . If this account
> is active or has been discharged in a bankruptcy proceeding, be advised this
> communication is for informational purposes only and is not an attempt to collect
> upon a debt.

The disclaimer clearly stated that the statement was for informational purposes only.

The informational statement in *Roth* also included a "Voluntary Payment Coupon," which

indicated that the debtor could voluntarily make a payment but that she was not required to do so.

The court noted that section 524(f) specifically contemplates a debtor's ability to make voluntary

payments on a discharged debt, and this is to enable a debtor who wishes to retain property

otherwise subject to foreclosure after entry of the discharge to cure arrearages and reinstate the

mortgage or payments.  Because the creditor had not completed a foreclosure of the property when

it sent the informational statement to the discharged debtor, the debtor could, under section 524(f),

elect to voluntarily pay the creditor thereby reinstating mortgage payments and retaining the

property.  Although the debtor stated her intent to surrender the property in her chapter 13

bankruptcy, she still retained certain rights as the owner of the property until the creditor exercised

its *in rem* foreclosure rights against the property.  Debtor's circumstances might have changed and

she might wish to retain ownership of the property.  The court found that the statement not only

included clear disclaimer language, but it also did not demand payment and did not request that

payment be made.

Similarly, in *Thomas v. Seterus Inc. (In re Thomas)*, 554 B.R. 512, 520-21 (Bankr. M.D.

Ala. 2016), the bankruptcy court explained that the creditor communicated the existence of the

debt to the debtors was not by itself an act to collect the debt where the statements included

13

disclaimers and did not overtly demand payment.  In *Thomas*, the creditor sent the debtor several statements that provided an itemization of the original principal balance, unpaid principal balance, the escrow balance, and the interest rate.  The communications included a section on the first page titled "Explanation of Amount Due."  The court found that the language merely provided an itemization of what the monthly payment consisted of (*i.e.*, the amounts of principal, interest, and escrow) if the debtors decided to pay it, and there was no other language on the first page demanding payment.  The second page of the document included a payment stub, but stated in bold capital letters at the top of the page that it was provided for informational purposes only.  The court concluded that, in light of the prominent and unambiguous disclaimer language, a reasonable consumer bankrupt would not construe the communication as a demand for payment.

Other courts have noted that when a communication contains a disclaimer, but otherwise seems to demand payment from a discharged debtor, the language may mitigate damages.  For example, *In re Wallace*, No. 09-bk-594-PMG, 2011 Bankr. LEXIS 1168, at *15 (Bankr. M.D. Fla. Apr. 5, 2011), the bankruptcy court noted that the "solely for informational purposes" statement included on notices sent to the debtor might prevent or mitigate an award of sanctions.

This Court has previously found that sending a debtor mortgage account statements does not violate the discharge injunction when the debtor has retained possession of the property after discharge and such statements provide helpful information.  *See In re Mele*, 486 B.R. 546 (Bankr. N.D. Ga. 2013).  Such statements often state that they are for "informational purposes" and provide information about the principal balance, account number, payment amount, due date, and payment instructions.  In *Mele*, the Court explained that "this type of statement is meant to educate a former debtor regarding her loan payments because the amount may have changed and because Plaintiff had declared her intention to keep her home."  *Id.* at 557.  In the case before it, the *Mele* court

14

concluded that the account statements sent to the debtor post discharge provided information to facilitate the retention of her home and they were not attempts to collect a debt from the debtor personally.  Other courts have found, though, that mortgage statements that do not include clear disclaimers may constitute attempts to collect a discharged debt.  For example, in *In re Brown*, 481 B.R. 351 (Bankr. W.D. Pa. 2012), the court concluded that several mortgage statements including the amount of payment, a due date, a late charge if not received by a certain date, a past due amount, and no disclaimer constituted attempts to collect a discharged debt.

Similarly, communications regarding escrow accounts do not violate the discharge injunction when they include disclaimers and indicate that the statements are being sent for informational purposes only.  *See e.g., Navarro v. Banco Popular de P.R. (In re Navarro)*, 563 B.R. 127, 134 (Bankr. D.P.R. 2017) (concluding that two escrow statements sent to the debtor included information required by law and disclaimers, in bold letters, that the statements were for informational purposes only did not violate the discharge injunction).  Conversely, escrow statements lacking clear disclaimer language may be improperly coercive and violate the discharge injunction.  *See In re Todt*, 567 B.R. 667, 679 (Bankr. D.N.H. 2017) (finding that communications that reflected no recognition of a bankruptcy discharge expressly and implicitly reflected an attempt to collect discharged obligations from the debtors).

This Court has also found that annual disclosure notices can be sent to discharged debtors without violating the discharge injunction.  In *Mele*, the Court noted that, even though annual disclosure notices may include payoff information, they often do not state an amount owed and do not make a demand for payment.  *See Mele*, 486 B.R. at 557.  As such, they do not violate the discharge injunction.

15

Likewise, responses to inquiries from a debtor that do not make any demand for payment and where the overall tenor is informational do not violate the discharge injunction. *Mele*, 486 B.R. at 557. In *Mele*, the court considered five items of correspondence that stated that they were sent in response to inquiries from the debtor, a fact that the debtor did not dispute. The Court found that each of the documents was responsive to inquiries from the debtor, did not contain any amounts owed or demands for payment, and did not seek to collect a debt personally from the debtor. Accordingly, they did not violate the discharge injunction.

Courts are careful to note, though, that even though a single communication may not be problematic, if calls and letters are sent relentlessly the cumulative effect is likely to amount to collection of a debt in violation of section 524. *See In re Wallace*, 2011 Bankr. LEXIS 1168. In *Mele*, 486 B.R. 546, the court noted that none of the fifteen documents sent to the discharged debtor, on an individual basis, sought to collect a debt personally. However, the collective effect of the fifteen items had to be considered as well. The fifteen documents sent to the debtor were sent over an eighteen month period. During that period, the creditor did not make any telephone calls to the debtor. Two-thirds of the documents sent to the debtor merely provide information and to respond to the debtor's request for information, others sought to facilitate retention of the debtor's home and payoff if made, and others provided information relating to the creditor's *in rem* rights. The Court found that the entire correspondence from the creditor to the debtor did not constitute an attempt to collect a debt personally from the debtor. While the Court noted that receiving correspondence from the creditor may have been distressing to the debtor, the creditor did not violate section 524.

16

## IV.    Application

Defendants do not dispute that they had knowledge of the Plaintiff's discharge and that they intended to send Plaintiff various communications.  The issue is whether the specific communications sent to Plaintiff constitute an attempt to collect a debt as a personal liability of Plaintiff.  Plaintiff's complaint refers to several communications from Citi and its foreclosure counsel that allegedly violate the discharge injunction; the parties have submitted several additional items of correspondence.  The Court will consider each of these in turn.

Exhibit B[3] is a letter from the Phelan firm dated February 18, 2015.  It states that the loan was referred to the law firm.  The communication was provided for informational purposes as Citi prepared to exercise its *in rem* rights in the Property  The letter does state the amount of the debt as of the date of the letter, but the last paragraph of the letter includes a disclaimer stating: "If you were previously in bankruptcy and received a Chapter 7 discharge, this correspondence is not and should not be construed as an attempt to collect a debt.  The action we have been requested to take would be limited to any ultimate foreclosure of the above referenced property."  The letter does not demand any type of payment from Plaintiff and includes an explicit disclaimer.  The Court finds that it does not violate the discharge injunction.

Exhibit C is a two-page letter from Citi dated February 21, 2017, that provides Plaintiff details about Citi's hardship treatment program.  The notices section on page two of the document concludes, in capital, bold type:

> **TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.**

---

[3] For ease of reference, the exhibits to which the Court refers are those attached to Defendant Citi's motion for summary judgment.

17

This is a prominent unambiguous disclaimer.  Moreover, the body of the communication is limited to providing information.  It does not state an amount due, and it does not demand payment in any way.  Given that the communication is informational and includes a clear disclaimer, the Court finds that it does not constitute an attempt to collect a debt from Plaintiff personally.

Exhibit D is a two-page letter from the Phelan firm dated May 31, 2017.  It states that Citi decided not to continue the foreclosure process.  The letter does not include an amount due.  The second page of the document includes a prominent disclaimer stating in bold, capital letters that the correspondence was provided for informational purposes only.  The disclaimer reads:

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.**

In light of this prominent and unambiguous disclaimer language, the Court finds that a reasonable consumer bankrupt would not construe the communication as a demand for payment.

Exhibit E is a two-page letter from Anthony DeMarlo, an attorney with the firm of McCurdy and Candler, LLC, dated June 21, 2010.  The letter informs Plaintiff that the firm has been retained to collect the debt.  The letter includes a payoff amount: "As of the date of this letter, you owe $130,220.86."  The letter does not overtly demand and coerce payment, though, and the second page of the communication includes a clear disclaimer.  It states: "If you have received a discharge in Bankruptcy proceeding, this notice is not intended to indicate that you are personally liable for this debt.  In this instance the information concerning the associated debt owed is for informational purposes only and should be disregarded for any purposes other than that of conducting a nonjudicial foreclosure of the security pursuant to Georgia law."  This disclaimer

unambiguously states that the communication was provided for informational purposes only and that the sender was not attempting to collect the debt personally from a discharged debtor. It appears that the sender was attempting to comply with all necessary requirements to keep Plaintiff informed until *in rem* rights were exercised. Therefore, the Court finds that the communication does not violate the discharge injunction.

Exhibit F is a letter from the Phelan firm dated August 13, 2014. The document includes helpful information about what Plaintiff should do in the event that Citi exercised its *in rem* rights. It states that the mortgage is about to be foreclosed upon and provides notice to Plaintiff that he should contact HUD if ownership is transferred after the foreclosure sale in the event that Plaintiff wishes to continue living in the Property. The document does not refer to an amount due and does not otherwise request payment from Plaintiff. It also includes a couple prominent and unambiguous disclaimers. At the top of the letter, there is a bold and capitalized notice stating:

> IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THE DEBT WAS NOT REAFFIRMED, THE CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF A LIEN AGAINST THE PROPERTY.

The same notice is included as the last paragraph, again in bold, capitalized letters, at the bottom of page two. This language clearly explains that the firm was not seeking to collect a debt from Plaintiff personally. The Court finds that there was a valid purpose in communicating the information to the Plaintiff and the communication was informational only. As such, the communication does not violate the discharge injunction.

Exhibit G is a letter from the Phelan firm dated March 4, 2015. The letter provides notice of a scheduled foreclosure sale. The letter does not include an amount due and it does not demand payment from the Plaintiff; rather, it provides information about the creditor's efforts to exercise

its *in rem* rights as to the Property.  The letter also concludes with a disclaimer that states: "If you have received a discharge in bankruptcy, this Notice is not intended to assert or restore personal liability on your part.   In this instance the information concerning the debt owed is for informational purposes only and should be disregarded for any purpose other than conducting a non-judicial foreclosure of the security pursuant to Georgia law."   In light of the information provided in the letter and the disclaimer language, the Court concludes that a reasonable consumer bankrupt would not construe the communication as a demand for payment.

Exhibit H1 is a one-page letter from Citi dated December 29, 2015, that provides information about common fees incurred during the servicing of a mortgage loan.  The letter does not reference a debt and does not state an amount owed.  It does not demand that Plaintiff pay any fees, and it provides helpful contact information should he have any questions.  It also includes unambiguous disclaimer language.  At the bottom of the page appears the following disclaimer:

> TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED, OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

The disclaimer is prominently displayed in capital letters, and it extensively describes the purpose for the communication.  The Court finds that a reasonable consumer debtor would not construe the communication as a demand for payment.  Accordingly, the communication does not violate the discharge injunction.

Exhibit H2 is a letter from Citi from June 16, 2016, in which it provides Plaintiff with information about the Servicemembers Civil Relief Act.  The letter does not reference a debt and does not state an amount owed.  The last paragraph on page two includes a disclaimer, in capital letters, stating:

20

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

This disclaimer is easy to find and quite clear that the communication was provided for informational purposes only. The communication is entirely information and nothing in it demands, or even hints at requesting, payment from Plaintiff personally. The Court concludes that a reasonable consumer debtor would not construe the communication as a demand for payment and, therefore, it does not violate the discharge injunction.

Exhibit H3 is a letter from the Phelan firm dated May 9, 2017. The communication was sent as the Phelan firm prepared for the 2017 foreclosure sale. The letter states the amount of debt due as of the date of the letter. It goes on to explain, though, that if Plaintiff received a chapter 7 discharge, the correspondence should not be construed as an attempt to collect a debt. The last paragraph says: "If you were previously in bankruptcy and received a Chapter 7 discharge, this correspondence is not and should not be construed as an attempt to collect a debt. The action we have been requested to take would be limited to any ultimate foreclosure of the above referenced property. . . ." The statement not only includes clear disclaimer language, but it also does not demand payment and did not request that payment be made. Further, because a foreclosure of the Property had not yet been completed when the informational statement was sent to Plaintiff, Plaintiff could have elected to voluntarily pay to reinstate the mortgage and retain and the Property. The Court finds that the overall tone of the communication is informational and the letter does not violate the discharge injunction.

Exhibit H4 is a letter from Citi from August 22, 2017, responding to a request from Plaintiff. The letter states, "Thank you for your recent inquiry regarding the servicing fees and

21

expense activity on your mortgage account.  We have enclosed a detailed history of these transactions for your review."  This communication was sent in response to Plaintiff's request, a fact that the Plaintiff does not dispute.  The letter and related summary of fees and expenses do not seek to collect a debt personally from the Plaintiff; rather, they provide information, requested by Plaintiff, to educate him about loan payments and related charges.  Accordingly, the Court finds that the communication does not violate the discharge injunction.

Exhibit H5 is an escrow analysis statement from Citi dated May 18, 2015.  The statement says, "Thank you for being a valued client of [Citi]!  Enclosed is your Escrow Analysis Statement, which has detailed information regarding your escrow account.  In an effort to provide you with a simple overview of the enclosed statement, below is a summary of the key information. . . ."  The communication was provided to Plaintiff for informational purposes and includes an itemization of the escrow balance.  This information would be helpful if Plaintiff intended to keep the secured property.  The document also includes an Escrow Shortage/Advance Coupon for Plaintiff to detach and return along with payment.  Unlike the statement sent to the debtor in *Thomas*, though, the statement does not include prominent and unambiguous disclaimer language.  The Court thus finds that a reasonable consumer bankrupt could construe the communication as a demand for payment.

Exhibit H6 is another escrow analysis statement provided by Citi on October 19, 2016.  The statement provides Plaintiff with detailed information regarding his escrow account.  It also includes an Escrow Shortage/Advance Coupon for Plaintiff to return along with payment.  There is no disclaimer language and no reference to bankruptcy at all.  As with H5, the Court finds that a reasonable consumer bankrupt could construe this communication as a demand for payment.

Exhibit I is a letter from Anthony DeMarlo, dated June 21, 2010.  It provides notice of a scheduled foreclosure sale.  The letter does not include an amount due and does not request

22

payment in any form.  The communication also states: "If you have received a discharge in Bankruptcy proceeding, this notice is not intended to indicate that you are personally liable for this debt.  In this instance the information concerning the associated debt owed is for informational purposes only and should be disregarded for any purposes other than that of conducting a non-judicial foreclosure of the security pursuant to Georgia law."   In sum, the letter provides information as Citi prepared to exercise its *in rem* rights in the Property and includes a clear disclaimer; it does not seek to collect a debt from Plaintiff personally and does not violate the discharge injunction.

Exhibit J is another letter from Anthony DeMarlo, dated December 1, 2010.  It states that the mortgage is about to be foreclosed upon and provides notice to Plaintiff that he should contact HUD if ownership is transferred to it after the foreclosure sale in the event that Plaintiff wishes to continue living in the Property.  The letter does not include any amount due and owing and does not request payment in any form.  The Court finds that there was a valid purpose in communicating the information to the Plaintiff and that the communication was informational only; therefore, it does not violate the discharge injunction.

Exhibit K is a short, half-page letter from Citi dated August 16, 2017.  The letter was sent in response to communications from Plaintiff and states that his letter will be reviewed and processed.  It does not include any amount due and owing, let alone any details about the loan, and it does not request payment in any form.  The letter is responsive to Plaintiff's requests and does not seek to collect a debt personally from him; as such, it does not violate the discharge injunction.

Exhibit L is a letter from Citi on August 22, 2017.  The letter was sent in response to a request from Plaintiff for information.  Plaintiff does not dispute that he requested the information included in the communication.  The letter includes information about the loan with Citi, including

details about servicing fees and expense activity such as escrow advances, inspection fees, and foreclosure costs.  This information would be helpful if Plaintiff intended to keep the secured property as it would facilitate the making of monthly post-petition payments by Plaintiff.  As other courts have noted, secured creditors should be encouraged to send informational statements to discharged debtors in such circumstances, particularly when the discharged debtor requests such information.  Moreover, the communication does not request that Plaintiff pay any of these figures; it does not even include an amount due and owing.  The Court finds that the letter is responsive to Plaintiff's requests and does not seek to collect a debt personally from him; accordingly, it does not violate the discharge injunction.

Exhibit M is a Mortgage Statement Information form sent from Citi on January 22, 2014. At the bottom of the first page, set off from the rest of the text, there is a disclaimer in bold, capital letters that states: "THIS AMOUNT DUE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT REFLECT FEES AND COSTS . . . ."  The account statement provides information to facilitate the retention of Plaintiff's home, should he seek to pay the amount due and reinstate the loan to retain the Property before foreclosure.  The statement does not demand payment from Plaintiff personally.  It also includes bold, unambiguous language so that a reasonable consumer bankrupt would not construe the communication as a demand for payment.  The Court finds that the statement does not violate the discharge injunction.[4]

Exhibit N is an annual escrow analysis sent by Citi dated September 19, 2016.  It provides information based on insurance and property tax estimates as Plaintiff continued to live in the Property.  This information would be helpful if Plaintiff intended to keep the secured property.

---

[4] Plaintiff attaches additional mortgage statements to his response to Defendant Citi's motion for summary judgment. All of the additional mortgage statements contain prominent disclaimer language like that contained in Exhibit M so that a reasonable consumer bankrupt would not construe the communications as a demand for payment.

The document includes an Escrow Shortage/Advance Coupon. The statement does not have prominent and unambiguous disclaimer language. In fact, the communication does not mention bankruptcy at all. Instead, the document concludes with the statement: "This is an attempt to collect a debt and any information obtained will be used for that purpose." The Court finds that a reasonable consumer bankrupt could construe the communication as a demand for payment.

Exhibit O is another annual escrow analysis from Citi that provides information based on insurance and property tax estimates. The communication includes an Escrow Shortage/Advance Coupon for Plaintiff to detach and return along with payment. It does not, however, contain prominent and unambiguous bankruptcy disclaimer information, and it also states that the communication constitutes an attempt to collect a debt. Given that the lack of disclaimer language, the Court finds that a reasonable consumer debtor could construe the communication as a demand for payment.

Exhibit P is a communication regarding Annual Disclosure Notices from Citi dated March 17, 2015. The opening sentence of the letter states: "We are writing to provide you with two (2) required annual disclosure Notices regarding your FHA loan and no response is required." The notice provides information required by governing FHA regulations. Indeed, the Code of Federal Regulations, 24 C.F.R. § 203.558(c), requires that the mortgagees on FHA-insured mortgages provide annual written notice regarding the amount outstanding for prepayment of a mortgage. The notice lists a total payoff amount, but it does not request payment in any form. It is informational in tone and includes details about the total amount due on the loan should Plaintiff want to pay it. Given that the document is informational in nature and does not coerce Plaintiff in paying any debt personally, the Court finds that the communication does not violate the discharge injunction.

Exhibit Q is a communication regarding Annual Disclosure Notices from Citi dated February 16, 2016, and Exhibit R is another communication regarding Annual Disclosure Notices from Citi dated February 1, 2017.  Like Exhibit P, these annual disclosure notices merely provide Plaintiff with information required by governing law.  They do not seek to collect a debt from Plaintiff personally, and the Court finds that they do not violate the discharge injunction.

Exhibit S is a 2010 Annual Tax and Interest Statement (1099-A) from Citi.  This statement, sent in accordance with federal law, shows the principal balance on the loan at the time of foreclosure and that Plaintiff was personally liable to repay the indebtedness "when the debt was created."  Plaintiff obtained the loan in 2002, prior to filing bankruptcy, and he was responsible for the debt when it was created.  The information on the tax statement is correct, and it does not indicate that Plaintiff was personally liable for the debt in 2010.  The Court finds that the document is informational and does not seek to collect a debt from Plaintiff personally.  As such, it does not violate the discharge injunction.

Exhibit T is an updated 2010 Annual Tax and Interest Statement (1099-A) from Citi.  The communication states, "Enclosed is your updated prior year tax Information.  Please retain for your records."  The information was sent in accordance with federal law.  It states the principal balance on the loan at the time of foreclosure and that Plaintiff was personally liable to repay the indebtedness "when the debt was created."  It notes that the outstanding principal balance on the loan was $0.  The Court finds that the document is informational, it does not seek to collect a debt from Plaintiff personally, and it does not violate the discharge injunction.

Exhibit U is an email from Ashby Kent, dated September 9, 2010, regarding Plaintiff's proposal to purchase the Property.  It indicates that Plaintiff had made a proposal to purchase the Property and that Citi was then in the process of evaluating Plaintiff's offer.  It does not include a

demand for payment from Plaintiff.  Rather, it refers to a settlement offer *from* Plaintiff.  The communication, sent in response to communications initiated by Plaintiff, does not violate the discharge injunction.

Exhibit V is a letter from Edward Medlin also regarding Plaintiff's proposal to purchase the Property.  It states, "The purpose of this letter is to affirm that, pursuant to your request, I contacted [Citi] by telephone on three separate occasions for the purpose of conveying to them your proposal to pay them the current fair market value of your property . . . ."  The letter relates to a settlement offer by Plaintiff; it does not demand payment from Plaintiff.  As such, it does not violate the discharge injunction.

While the Court concludes that most of the documents sent to Plaintiff do not seek to collect a debt personally from him, the Court must also consider the collective effect of the documents. The correspondence to Plaintiff was sent over a period of seven years.  During that period, Defendants did not make any telephone calls to Plaintiff.  Many of the documents sent to Plaintiff provide information to facilitate retention of Plaintiff's home and payoff if made and provide information relating to the creditor's *in rem* rights.  Others were sent to comply with federal law, and still others respond to the Plaintiff's requests for information.  Plaintiff may have been distressed by receiving correspondence from Defendants, but the Court finds that the body of correspondence from Plaintiff did not constitute an attempt to collect a debt personally from Plaintiff.

The Court concludes that, with the exception of the escrow statements sent to Plaintiff lacking clear disclaimers, a reasonable consumer debtor would not construe the communications sent to Plaintiff as a demand for payment.

V.     **Conclusion**

For the reasons stated above, the Court concludes that Defendant Citi violated section 524 by sending Plaintiff escrow statements that a reasonable consumer debtor could construe as a demand for payment.  Defendants did not violate the discharge injunction by sending Plaintiff other items of correspondence after he received his bankruptcy discharge.  Accordingly,

**IT IS ORDERED** that Defendant Citi's Motion is **GRANTED IN PART**.  The Court will consider the issue of damages separately.

**IT IS FURTHER ORDERED** that Defendant the Phelan firm's Motion is **GRANTED**.

The Clerk's Office is directed to serve a copy of this order on Plaintiff, Defendants, and Defendants' counsel.

**END OF DOCUMENT**

United States Bankruptcy Court
Northern District of Georgia

Jones,
     Plaintiff
                                                   Adv. Proc. No. 17-05231-wlh

CitiMortgage, Inc.,
     Defendant

# CERTIFICATE OF NOTICE

District/off: 113E-9     User: smn1     Page 1 of 1     Date Rcvd: Feb 05, 2018
                        Form ID: pdf582     Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Feb 07, 2018.
dft         +CitiMortgage, Inc.,   c/o Christopher D. Davies, CEO,   605 Munn Road,
                  Fort Mill, SC 29715-8421

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                TOTAL: 0

        ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
*         +CitiMortgage, Inc.,   c/o Christopher D. Davies, CEO,   605 Munn Road,
                  Fort Mill, SC 29715-8421
                                                TOTALS: 0, * 1, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social
Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required
by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 07, 2018                         Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on January 29, 2018 at the address(es) listed below:
        Erin C. Howell   on behalf of Defendant   CitiMortgage, Inc. ehowell@burr.com,  dchisolm@burr.com
        Kelly E. Waits   on behalf of Defendant   CitiMortgage, Inc. kwaits@burr.com
        Kwende B. Jones   on behalf of Defendant   CitiMortgage, Inc.
        Stephen Ryan Starks   on behalf of Defendant   CitiMortgage, Inc.
        GAND.bankruptcy@phelanhallinan.com,  GA.ECF@phelanhallinan.com
        Stephen Ryan Starks   on behalf of Defendant   Phelan, Hallinan, Diamond & Jones, PPLC
        GAND.bankruptcy@phelanhallinan.com,  GA.ECF@phelanhallinan.com
                                                  TOTAL: 5